IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN ALLEN BRAZ, JR.,           §
Petitioner,                     §
                                §
v.                              §       Case No. 3:16-cv-3195-G (BT)
                                §
LORIE DAVIS, Director, TDCJ-CID §
Respondent.                     §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This cause of action was referred to the United States magistrate judge
pursuant to the provisions of Title 28, United States Code, § 636(b), as
implemented by an order of the United States District Court for the Northern
District of Texas. The findings, conclusions, and recommendation of the United
States magistrate judge follow:

## I.    Procedural Background

Petitioner filed this petition for writ of habeas corpus under 28 U.S.C.
§ 2254. For the foregoing reasons, the Court recommends that the petition be
DENIED.

Petitioner challenges his conviction for three counts of aggravated sexual
assault of a child. *State of Texas v. John Allen Braz, Jr.*, Nos. 23420A-422
(422nd Jud. Dist. Ct., Kaufman County, Tex., Mar. 24, 2006). Petitioner was
sentenced to 30 years in prison for Counts One and Three and 35 years in prison
for Count Two, to run concurrently.

1

On July 16, 2007, the Fifth District Court of Appeals affirmed Petitioner's convictions and sentences. *Braz v. State*, No. 05-06-00428-CR, 2007 WL 2028757 (Tex. App. – Dallas, 2007, pet. ref'd). On December 17, 2008, the Court of Criminal Appeals refused Petitioner's petition for discretionary review.

On March 11, 2010, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Braz*, Application No. 82,368-01. On November 2, 2016, the Court of Criminal Appeals denied the petition without written order on the findings of the trial court without a hearing.

On November 6, 2016, Petitioner filed this federal petition, in which he argues:

1.   He received ineffective assistance of counsel during the guilt/innocence phase of his trial, when defense counsel:
     (a)   invited evidence that Petitioner was previously arrested;
     (b)   volunteered evidence that Petitioner used illegal drugs;
     (c)   failed to exclude or obtain limiting instructions for unfavorable evidence;
     (d)   failed to admit evidence favorable to the defense;
     (e)   failed to object to improper arguments and evidence;

2.   He received ineffective assistance of counsel during the punishment phase of his trial, when defense counsel:
     (a)   failed to raise issues regarding the complainant's sexual history; and
     (b)   failed to call certain witnesses;

3.   He received ineffective assistance of appellate counsel when counsel:
     (a)   failed to call trial counsel as a witness at his mistrial hearing; and

      (b)     failed to appeal the decision denying his motion
             for new trial;

4.     He received ineffective assistance of state habeas counsel
       when counsel:
      (a)     failed to submit findings and conclusions to the
             court;
      (b)     failed to object to the court's findings and
             conclusions;
      (c)     failed to provide Petitioner with affidavits;

5.     He is actually innocent; and

6.     The evidence was legally insufficient to support the
       convictions in Counts One and Three.

On April 7, 2017, Respondent filed her answer. On September 10, 2017,

Petitioner filed a reply. The issues have been fully briefed, and the matter is ripe

for determination.

## II.    <u>**Factual Background**</u>

The following factual background is taken from the appellate court's

decision:

> In July 2004, twelve-year-old N.L. was visiting appellant's daughter
> and spent the night at appellant's house. N.L. was not tired, and she
> stayed up on the couch with appellant. Appellant told N.L. he wanted
> her, and she said she wanted him. Appellant took off N.L.'s clothes,
> and she lay down on her stomach. N.L. felt appellant "putting his thing
> in like my butt, you know." By "thing," N.L. testified, she meant his
> penis. N.L. further testified appellant's penis was "in the fold" of her
> buttocks, and it was "uncomfortable" and "just felt weird." Appellant
> ejaculated in his hand and went to the kitchen to wash his hand. N.L.
> and appellant talked some more, and N.L. went to bed.
>
> The next morning, appellant woke N.L., and she wanted him to stay
> home from work so that she could be with him. Appellant was not able
> to stay home, but he stayed for a little while and asked N.L. to have
> sex with him. N.L. was uncertain about having sex, but she ultimately

said she would. Again, appellant took off N.L.'s pajamas and his clothes and "put his penis in [N.L.'s] vagina." N.L. testified it hurt and was "like a burn" when appellant put his penis in her vagina. N.L. said she wanted appellant to "do it the other way" which meant "from the back." Appellant then put his penis in "the fold" of her buttocks "the same way we did the first time." Appellant was subsequently indicted for three counts of aggravated assault. The indictment alleged appellant twice caused the anus of N.L. to contact his male sexual organ and that he once caused the penetration of N.L.'s female sexual organ with his male sexual organ. A jury convicted appellant of all three counts, and this appeal followed.

*Braz*, 2007 WL 2028757 at *1.

## III.  Discussion

### 1.  Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of

1996 (the AEDPA), 28 U.S.C. § 2254 provide:

(d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court

may grant the writ of habeas corpus if the state court arrives at a conclusion

opposite to that reached by the United States Supreme Court on a question of law

or if the state court decides a case differently from the United States Supreme

Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

### 2.    Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing

5

'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### (A) Previous Arrest

Petitioner claims his trial counsel was ineffective when counsel "invited" evidence that Petitioner was arrested for aggravated assault years prior to the trial.

The record shows defense counsel asked Petitioner's wife, Monique Braz,[1] whether Petitioner had ever been convicted of a felony. (ECF No. 19-4 at 107.) Monique stated, "No." (*Id.*) On cross-examination, the prosecutor asked Monique whether Petitioner had been arrested for committing aggravated assault against her, and whether he was convicted of the lesser charge of terroristic threat. (*Id.* at 131-32.) Monique admitted Petitioner had been arrested for assaulting her. (*Id.* at 132.) Petitioner argues his trial counsel was ineffective for opening the door to questions regarding his criminal history.

On state habeas review, Petitioner's trial counsel responded to Petitioner's claims. Counsel stated:

> I asked about felony convictions to prove up probation eligibility in the event of a guilty verdict (so I would not have to put this witness or any witness, if I so chose to do so, back on the stand during the punishment phase, if convicted.) . . .
>
> Although I had talked to my client and his wife before trial about prospective witnesses and testimony, I did not know about a previous assault on the witness; I might not have asked the question about probation eligibility if I had known. Neither the

---

[1] To avoid confusion, the Court will refer to Monique Braz as "Monique," witness Violet Braz as "Violet," and Petitioner John Braz as "Petitioner."

defendant nor the witness told me about a previous assault between the two.

(ECF No. 19-19 at 12.)

Under *Strickland*, courts must apply "a heavy measure of deference to counsel's judgments" and recognize that "[c]ounsel's actions are usually based, quite properly, . . . on information supplied by the defendant." *Strickland*, 466 U.S. at 691. Here, Petitioner failed to inform his trial counsel that although he had not been convicted of a felony, he had been arrested for a felony. Further, Petitioner has failed to the show that the decision to prove up parole eligibility fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) ("We must strongly presume . . . that the challenged conduct was the product of reasoned trial strategy.") (citing *Strickland*, 466 U.S. at 690). Finally, the record shows Petitioner's trial counsel objected to the prosecutor asking Monique whether Petitioner had "committed felonies before." The court overruled the objection. Petitioner has failed to establish ineffective assistance of counsel on the ground that his trial counsel invited evidence that Petitioner had a prior arrest.

### (B)   Illegal Drugs

Petitioner claims his trial counsel was ineffective when counsel elicited testimony from Monique that Petitioner used illegal drugs. The record shows Monique testified that officers served a search warrant at her house, and that officers accused her and Petitioner of using drugs. She testified as follows:

7

> [The officers] said we know that your husband and you are using drugs in the house. I said it's not true. They said oh, we can find out. We can prove it. I said take me right now and drug test me, drug test him. None of that was ever done. It was just threats that they threw up at me.

(ECF No. 19-5 at 144.)

The record shows Monique did not testify that Petitioner was using drugs. Instead, she testified Petitioner was not using drugs and that officers were attempting to threaten her. Petitioner has failed to show defense counsel was ineffective for volunteering evidence that Petitioner used illegal drugs.

### (C)    Evidence Favorable to the Defense

Petitioner argues his trial counsel was ineffective when counsel failed to admit evidence favorable to the defense. He claims counsel should have admitted the following evidence: (1) the complainant had falsely accused another man of sexual abuse; (2) the complainant based her allegations on pornography; (3) testimony from his roommate, Pete Rohus, that (a) Petitioner never had the opportunity to be alone with the complainant, and (b) the complainant disliked Petitioner's wife; (4) testimony from Violet Braz that would have disputed officers' testimony about the search at Petitioner's house; (5) testimony that there was alcohol abuse at the complainant's home; (6) testimony that Petitioner had a "normal" dating relationship with a thirteen-year-old girl when he was 20 years old, and that the girl lied to Petitioner and told him she was 17 years old.

### (1)    False Accusation

Petitioner claims his trial counsel failed to elicit testimony that the complainant "may have falsely accused another man of sex abuse." (ECF No. 3 at 7.) Petitioner argues counsel should have questioned witness H.W. about a relationship the complainant allegedly had with a man named Scott Phillips. On state habeas review, H.W. submitted an affidavit in which she stated:

> [The complainant] skipped school with this guy Scott who is over the age of 23. I really don't know who (sic) his age. I know he is to (sic) old. She told me on the bus that they went to Terrell. Then he (sic) man called her on her cell phone because the school had called her. Then when they got home she said she wanted to have sex with him, but she wanted to wait for marriage. So, she said she jacked him off. After he had left, she said her dad came in saying where is he and he would kill him. She told ever (sic) one that she was ingaged (sic) to Scott. Then she was on the phone with him after school with Sara F. and told her she was pregnant.

(ECF No. 19-21 at 120-21.)

Although H.W. testified at trial, defense counsel did not ask her about this information. The record shows, however, that Petitioner's trial counsel attempted to admit evidence of the complainant's relationship with Phillips, but the trial court denied the testimony. (ECF No. 19-6 at 14-15.) Petitioner's claim is therefore without merit.

### (2)    Violet Braz

Petitioner claims his counsel failed to call Violet Braz to testify at trial. Petitioner states Violet was present with Monique when officers searched Petitioner's house, and could have substantiated Monique's testimony regarding

statements made during the search. Violet submitted an affidavit on state habeas review in which she substantiated Monique's testimony that: (1) Monique told officers she was not suspicious of Petitioner and she did not believe the allegations against Petitioner; and (2) a suitcase was in the hall because Petitioner had a job in Galveston, and he was not attempting to flee. Violet also stated that officers searched for a specific bottle of lotion, did not find it, but removed a different bottle of lotion. (ECF No. 19-21 at 130.)

Petitioner's trial counsel submitted an affidavit on state habeas review stating, "I do not know Violet Braz; I was never informed who she was or what she would say or what she knew." (ECF No. 19-19 at 13.) Petitioner has failed to establish ineffective assistance where Petitioner has submitted no evidence that his counsel would have reason to know about Violet, and where Petitioner knew about Violet's potential testimony, but did not alert defense counsel. *Strickland*, 466 U.S. at 691; *See also Burger v. Kemp*, 483 U.S. 776, 794-95 (1987) (finding reasonable defense counsel's decision to interview only those witnesses called to his attention by the defendant); *James v. Butler*, 827 F.2d 1006, 1017 (same) (5th Cir. 1987). This claim should be denied.

### (3)    Pete Rohus

Petitioner claims his trial counsel failed to elicit favorable testimony from his roommate, Pete Rohus. On state habeas review, Rohus submitted an affidavit stating the complainant was never alone with Petitioner, the complainant had "a

large amount of dislike" for Petitioner's wife Monique, the complainant mentioned watching her father's "pornos" at home, and the complainant made up lies. (ECF No. 19-21 at 128.)

Petitioner's trial counsel responded by affidavit that Rohus did not inform him that the complainant disliked Monique, or that the complainant viewed pornographic material and used it as a basis for her complaint against Petitioner. (ECF No. 19-19 at 13.)  Counsel further stated he did "not believe that Rohus would have been able to testify that he and the petitioner were never separated (thereby allowing [the complainant] to be alone with the petitioner): i.e. restroom trips, times when both were asleep, etc." (*Id.*)

The state habeas court stated:

> The Court further finds that Rohus's proposed testimony that applicant was "never" alone with NL during the week when she made outcry would not have been persuasive, because other testimony showed that Rohus was working a separate job on weekends at that time and because Rohus could not realistically have known the whereabouts of everyone in the house at all times, including when he - Rohus -was asleep in his own room.

(*Id.* at 24-25.)  Petitioner does not dispute that Rohus would not have known the location of the complainant and Petitioner when Rohus was asleep in his room, or was in the bathroom. The complainant testified that the first sexual assault occurred at night when everyone else in the house was sleeping. (ECF No. 19-4 at 75.)

Petitioner also stated that "Rohus was at trial only because Braz and Monique were able to locate Rohus and urge his attendance that morning which may have been the second day of trial." (ECF No. 26-1 at 9.) Petitioner has submitted no evidence that the inability to timely locate Rohus was due to any deficient performance by Petitioner' trial counsel. This claim should be denied.

### (4)    Alcohol Abuse

Petitioner argues that his trial counsel should have presented witnesses to testify about alcohol abuse by the complainant's parents. Defense counsel attempted to admit this testimony, but the trial court found it was not relevant and denied the testimony. (ECF No. 19-5 at 26-27.) This claim should be denied.

### (5)    V.P.'s Testimony

Petitioner claims counsel failed to call three witnesses to respond to extraneous offense witness V.P.'s trial testimony.

V.P. testified at trial that when she was 12 years old she worked as a babysitter for Monique. (*Id.* at 75.) V.P. stated she met Petitioner while she was babysitting and they started a sexual relationship when she was 12 that lasted several months. (*Id.* at 75-78.) She stated her parents found out about the relationship and called police. (*Id.* at 79.)

After V.P. testified, Monique was re-called to testify. Monique stated that when she hired V.P. as a babysitter, V.P. told her she was 17 years old and in high school. (*Id.* at 125.) Monique was not married to Petitioner at the time, but

Monique stated Monique and her previous husband double-dated with Petitioner and V.P. (*Id.* at 125-26.)

After Monique testified, the prosecutor re-called V.P. to testify. V.P. stated she never represented to anyone that she was 17 years old, she and Petitioner never double-dated with Monique, and she never had any public dates with Petitioner. (*Id.* at 155.)

On state habeas review, Petitioner submitted affidavits from his sister, brother, and a friend of Monique's in which they each said V.P. told them she was 17 years old and in high school. (ECF No. 19-21 at 132, 134, and 136.)  Petitioner argues his counsel should have admitted "evidence that I had a normal dating relationship with [V.P.] who claimed I abused her when I was about 20 and she was about 13 representing herself to be 17."  (ECF No. 3 at 7.)

Defense counsel responded to Petitioner's claims by affidavit. Counsel stated:

> Concerning bringing out testimony that the petitioner and [V.P.] had a "normal dating relationship": There was nothing to be gained by attempting to establish a normal dating relationship between a 13 year old female and a 22 year old male. It is impossible to put a positive spin on that testimony.

(ECF No. 19-19 at 11.)

The state habeas court found Petitioner's claim to be without merit. The court stated:

> All three affidavits re VP and her "dating relationship" with applicant appear to have been written together or by

13

> the same person. None of those affidavits was relevant to
> whether applicant committed aggravated sexual assault
> of VP, but in any event, none of the testimony of these
> witnesses would have materially assisted applicant's
> defense, because they merely suggested that he was easily
> persuaded to have sexual contact with a child under the
> age of legal consent on another occasion.

(*Id.* at 23-24.)

The Court finds defense counsel's decisions not to call Petitioner's witnesses to establish that Petitioner's relationship with V.P. constituted a normal dating relationship, and that V.P. claimed she was 17 years old, were decisions based on a reasonable trial strategy. Petitioner has failed to establish ineffective assistance of counsel based on any assertion that Petitioner's trial counsel failed to admit evidence favorable to the defense.

### (D)    Objections and Limiting Instructions

Petitioner claims his trial counsel failed to make proper objections to exclude evidence and failed to obtain adequate limiting instructions.

### (1)    Video Evidence

Petitioner alleges the video of the complainant's statements to a forensic interviewer was inadmissible, and any claim that complainant's video statements were consistent with her trial testimony was also inadmissible.

At trial, the prosecutor offered a video of the complainant's forensic interview to show that the complainant's trial testimony was consistent with her original statements. (ECF No. 19-5 at 98-99.)  Petitioner's trial counsel objected that the video was not properly authenticated and that the video violated

14

Petitioner's right to confrontation. (*Id.* at 96.)  The court overruled defense counsel's objections and allowed the video into evidence. Petitioner has failed to show his counsel failed to object to the video evidence.

### (2)    Adultery

Petitioner claims his trial counsel should have objected to testimony that he and his wife committed adultery. Defense counsel responded in his state habeas petition that: "I do not recall any testimony about this point; and even if it was in evidence, I would not want to reemphasize the damaging testimony." (ECF No. 19-19 at 13.)

The record shows the prosecutor elicited some testimony on the subject of adultery during trial. Specifically, Monique testified that although her son was also Petitioner's biological child, Petitioner legally adopted the boy. The prosecutor asked why Petitioner adopted his biological son. Monique explained that although she was separated from her ex-husband at the time of her son's birth, she was not divorced from her ex-husband at that time, so her ex-husband was her son's legal father. (ECF No. 19-5 at 135-36.) The prosecutor then asked Monique, "So you were married at the time that you and the defendant were having sex, is that correct?" (*Id.* at 135.)  Defense counsel objected to this question. (*Id.* at 136.)  Therefore, Petitioner's claim of ineffective assistance counsel on this ground is without merit.

### (3)    Testimony of V.P.

Petitioner argues counsel should have objected to: (1) evidence that he was arrested for sexual assault against V.P.; (2) V.P.'s testimony about her "desire for the jury to convict [Petitioner] because [he] was not indicted in [V.P's] case; and (3) testimony regarding "[V.P.'s] ongoing suffering."  (ECF No. 3 at 7.)

The record shows Petitioner's trial counsel objected when the prosecutor called V.P. as a witness. (ECF No. 19-5 at 69-70.)  Counsel argued V.P.'s testimony was too prejudicial, and that Petitioner's relationship with V.P. was not sufficiently similar to the current charges against him to be admissible. (*Id.*)  The trial court overruled the objections. (*Id.* at 73.)  Petitioner's ineffective assistance of counsel claim should be denied.

### (4)    Statements

Petitioner argues counsel should have objected to:  (1) Monique's testimony as an outcry witness; (2) Officer Kirby's testimony that the complainant described sexual lotion that was found in Petitioner's bedroom; and (3) testimony from Officers Derichsweiler and Stewart that Monique "made verbal and non-verbal assertions, including being upset during their initial contacts with her, that Braz was guilty."  (ECF No. 26-1 at 20.)

### (i)    Outcry Witness

Petitioner states Monique was offered at trial as an outcry witness, but the trial court failed to determine the reliability of Monique's statements, and the complainant failed to describe the offense to Monique in sufficient detail.

16

Under Texas Code of Criminal Procedure art. 38.072, an outcry witness is "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense or extraneous crime, wrong or act." Here, there was no dispute that Monique was the first person, other than the defendant, that the complainant told about the assault. The complainant also clearly described a sexual assault. The complainant testified she told Monique that complainant and Petitioner "had sex two times, and [Monique] asked me where, and I said in the living room and in their bed." (ECF No. 19-4 at 89.) Monique testified that complainant told her, "I am fucking your husband." (*Id.* at 35.) Petitioner has failed to show his counsel was ineffective for failing to object to Monique as an outcry witness.

### (ii)   Officer Kirby

The record shows Officer Kirby testified that she executed a search warrant at Petitioner's home to locate a bottle of sexual lotion described by the complainant. (*Id.* at 63.) Petitioner argues this testimony should have been excluded as hearsay. The testimony, however, was admissible to show why Officer Kirby obtained a search warrant and why she was at Petitioner's house. Petitioner's claim should be denied.

### (iii)   Offers Stewart and Derichsweiler

Petitioner claims counsel should have objected to alleged hearsay testimony from Officers Stewart and Derichsweiler. Officer Stewart testified Monique told him she was suspicious of Petitioner, and that Petitioner may be

17

guilty of the charges. (ECF No. 19-5 at 113.)  Petitioner's trial counsel objected to this testimony, but the court overruled the objection. (*Id.* at 114.)  Officer Derichsweiler testified Monique told him her husband was guilty of the charges. (*Id.* at 107-08.)  The testimony was admissible as a prior inconsistent statement. *See* Tex. R. Evid. 613(b). Defense counsel also pointed out that Monique's written statement did not include a claim that her husband was guilty.  Petitioner has failed to show his counsel was ineffective.

### (5)    Prosecutor's Statements

Petitioner argues his trial counsel should have objected to the prosecutor's closing argument when the prosecutor referred to witnesses from the complainant's school who testified at trial. The prosecutor stated: "[T]hey've actually been perfect what I call punishment evidence of how a young girl is ostracized when she makes an outcry like this."  (ECF No. 19-5 at 181.)  Petitioner also argues the prosecutor improperly inferred that the complainant recanted the allegations to her school friends to avoid being ostracized. It is not misconduct, however, for a prosecutor to argue what he or she believes the evidence has showed. *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987). Petitioner has failed to establish ineffective assistance of counsel.

### (6)    Rule of Sequestration

Petitioner claims his trial counsel failed to object to testimony alleging that two defense witnesses violated the rule of sequestration. The record shows,

however, that defense counsel did object to this testimony, but the trial court overruled the objection. (ECF No. 19-5 at 85-86.)  Further, although Petitioner argues counsel should have called witness C.B. to testify as to whether she violated the Rule, the trial court allowed only testimony from L.W. as to whether the Rule was violated, and whether any violation affected her testimony. (*Id.* at 86.)  Petitioner's claim should be denied.

Petitioner has not shown that counsel failed to make proper objections to exclude evidence or failed to obtain adequate limiting instructions.

### (E)   Punishment

Petitioner claims he received ineffective assistance of counsel during punishment when counsel failed to raise issues regarding the complainant's sexual history, and when counsel failed to call witnesses to testify about his relationship with V.P.

### (1)   Sexual History

Petitioner states counsel failed to call H.W. to testify about the complainant's alleged sexual relationship with Scott Phillips. Petitioner argues this evidence would have helped the jury "to assess the harm that he allegedly inflicted on [the complainant]. Because [the complainant] was sexually inappropriate before the alleged offense."  (ECF No. 26-1 at 25.)  Petitioner's trial counsel responded on state habeas review that the trial court would not have allowed this testimony in punishment. (ECF No. 19-19 at 14.)  Further, under Texas Rule of Evidence 412, evidence of specific instances of a victim's past

sexual behavior is admissible only in very narrow circumstances not alleged here. Petitioner has failed to establish ineffective assistance of counsel.

### (2)    Extraneous Witness V.P.

Petitioner claims counsel should have admitted testimony from Jennifer Goranson, Charles Berryhill, and Jerry Palbick that extraneous offense witness V.P. told them she was 17 years old, rather than 12 or 13 years old.

Defense counsel responded in his affidavit that he was not aware of these witnesses. (*Id.*)  Additionally, the trial court stated in its habeas decision that:

> The Court further finds in regard to the punishment phase that the Court would likely have excluded any testimony from applicant's friends regarding whether extraneous victim VP "looked" or "acted" like a high school senior or adult at the time of the extraneous offense applicant committed against her, because proof of VP's appearance was not an element of, or defense to, that extraneous offense.

(*Id.* at 28.)

Petitioner has failed to show his trial counsel was deficient or that Petitioner suffered the required prejudice with respect to any alleged failure to object to particular history or call a particular witness.

### (F)    Appellate Counsel

Petitioner argues his appellate counsel failed to call his trial counsel as a witness at a mistrial hearing, and that counsel failed to appeal the denial of his motion for new trial. Petitioner fails to state what his trial counsel would have said during any mistrial hearing, or how it would have benefitted the defense. *See*

20

*Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings); *see also Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Also, Petitioner's motion for new trial stated only that the "verdict is contrary to the law and evidence." (ECF No. 19-20 at 73.) Petitioner's appellate counsel raised specific grounds on appeal to argue that the verdict was contrary to the law and evidence. Petitioner's claim is without merit.

### (G)    Habeas Counsel

Petitioner argues his state habeas counsel was ineffective when counsel: (1) did not submit findings and conclusions to the trial court; (2) did not object to the court's findings and conclusions; and (3) did not provide Petitioner with affidavits. There is no constitutional right to counsel in state habeas proceedings. 28 U.S.C. § 2254(I); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001) (citing *Fairman v. Anderson*, 188 F.3d 635, 643 (5th Cir. 1999)). Petitioner therefore cannot establish a violation of his constitutional right to counsel based on any alleged error by his state habeas counsel.

### 3.    Actual Innocence

Petitioner claims he is actually innocent. A claim of actual innocence independent of constitutional infirmity at trial is not cognizable on habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1988). Further, to be credible, a claim of actual innocence must

be based on reliable evidence not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Where a petitioner asserts his actual innocence, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup*, 513 U.S. at 327.

Here, Petitioner alleges the evidence at trial shows the complainant was not credible. He also claims: (1) the affidavits he submitted in his motion for new trial show that extraneous offense witness V.P. represented herself as 17 years old, (ECF No. 19-7 at 33-37); (2) the complainant's classmate L.W.'s affidavit showed that other students told L.W. that complainant was going to beat her up, (*Id.* at 41); (3) Barbara Wooldridge's affidavit showed that when Wooldridge dropped her child off at the complainant's house, the complainant's parents smelled of alcohol, (*Id.* at 39); (4) Violet's affidavit showed Petitioner was not attempting to flee, and that although officers located a bottle of lotion in Petitioner's bedroom, it was not same lotion described in the search warrant, (*Id.* at 31); (5) Jodi Hudgens West's affidavit showed that the complainant threatened to beat up West's daughter, that the complainant was "moving on" with a 26 year old man, and that complainant smokes cigarettes, (*Id.* at 24-27); and (6) H.W.'s affidavit stated the complainant was dating a man named "Scott," and that the

22

complainant had to go to a daycare because she could not keep boys out of her house, (*Id.* at 20-22).

Petitioner has failed to show he is actually innocent. The trial evidence does not constitute new evidence for Petitioner's actual innocence claim. Further, the post-trial affidavits Petitioner submitted do not establish that it is more likely than not that no juror would have convicted him in view of the information in the affidavits. Petitioner's claim should be denied.

### 4.    Insufficient Evidence

Petitioner claims the evidence was insufficient to convict him of Counts One and Three, which charged him with intentionally and knowingly causing the anus of the complainant to contact his male sex organ. (ECF No. 3 at 7.) Petitioner argues the complainant testified that Petitioner put his penis in the "fold" of her buttocks, therefore there was no contact with the anus. (*Id.* at 9.)

A federal court may not disturb a conviction in a state criminal proceeding unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. 319; *Gibson*, 947 F.2d at 781.

Under Texas law, a person commits aggravated sexual assault if he:

(B)    intentionally or knowingly:

> (iv) causes the anus of a child to contact the mouth, anus, or
> sexual organ of another person, including the actor;
>
> . . . .

Tex. Penal Code § 22.021 (West 2006).

Petitioner raised this claim on direct appeal. The appellate court

stated:

> Here, the record contains [complainant's] testimony that
> appellant put his penis in her "butt" when she was twelve
> years old. [Complainant] testified appellant put his penis
> in her vagina the next morning and then again put his
> penis in the "fold" of her buttocks just as he had the night
> before. Appellant presented testimony from his Daughter
> C.B., thirteen at the time of trial, that [complainant] had
> said at school that nothing happened between
> [complainant] and appellant. H.W., thirteen at the time
> of trial and L.W., twelve at the time of trial, also testified
> [complainant] told them nothing happened between her
> and appellant. Appellant also testified that nothing
> happened between him and [complainant]. Appellant
> also argues that the other people in the house and the
> configuration of the house would have led to discovery of
> the assault if it had happened. However, the jury was free
> to believe [complainant's] testimony and disregard the
> evidence that the house was not an ideal setting for an
> aggravated sexual assault, [complainant] denied the
> assault in front of her friends at school, and appellant
> said nothing happened. We note the State only had to
> prove appellant's penis made contact with
> [complainant's] anus. We have reviewed the record, and
> it appears the evidence was legally and factually sufficient
> to show that appellant's penis made contact with
> [complainant's] anus as alleged in the indictment and
> that he also put his penis inside [complainant's] vagina.

*Braz*, 2007 WL 2028757 at *2.

The record shows the complainant testified Petitioner placed his penis "in the fold" of her buttocks on two occasions. (ECF No. 19-4 at 80-87.) The offense required only that there be contact with the anus, and did not require penetration. Texas courts give wide latitude to the descriptions of sexual abuse by children. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). Texas courts have concluded that a fact finder could reasonably infer a victim was referring to the anus when stating an act was performed "in the butt." *See Saldana v. State*, 287 S.W.3d 43, 61 (Tex. App.–Corpus Christi 2008, pet. ref'd) (concluding outcry testimony that victim stated appellant licked her "in her butt" was sufficient to establish contact with anus for purposes of aggravated sexual assault of child) (collecting cases); *Mallett v. State*, 9 S.W.3d 856, 864 (Tex. App.–Fort Worth 2000, no pet.) (concluding jury could reasonably infer victim's reference to "butt" was reference to her anus). Viewing the evidence in the light most favorable to the verdict, Petitioner has failed to show the evidence was insufficient to convict him of Counts One and Three.

### 5.    Summary

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally-protected interest. Accordingly, the state courts' decision to deny relief is not contrary to, or does not involve an unreasonable application of, clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## IV.    <u>**Recommendation**</u>

For the foregoing reasons, Petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254 should be DENIED with prejudice for failure to make a substantial showing of the denial of a federal right.

Signed May 18, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The Court directs the United States District Clerk to serve on the parties a true copy of the Findings, Conclusions, and Recommendation of the United States Magistrate Judge. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these Findings, Conclusions, and Recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these Findings, Conclusions, and Recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the Findings, Conclusions, and Recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

26